**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DEANDRE FORREST,**

    **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**CASE NO. 2:20-CV-00775**
**CRIM. NO. 2:17-CR-00158**
**JUDGE JAMES L. GRAHAM**
**Magistrate Judge Kimberly A. Jolson**

**ORDER AND**
**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings this Motion to Vacate under 28 U.S.C. § 2255.  (Doc. 152).  The Court granted Petitioner's request for an evidentiary hearing on his claim that his lawyer unconstitutionally conceded his guilt.  (Doc. 167).  And, on February 10, 2021, the Court held the hearing, making the case ripe for review.  This matter is before the Court on the Motion to Vacate, Respondent's Return of Writ, Petitioner's Reply and Supplemental Brief, and the exhibits of the parties.  For the reasons that follow, it is **RECOMMENDED** that the claims in the Motion to Vacate under 28 U.S.C. § 2255 (Doc. 152), Claims One, Two, and Three, be **DISMISSED**.

Additionally, on December 17, 2020, Petitioner filed a Second Supplemental Brief in Support in which he raises seven new claims for relief.  (Doc. 182).  The Court construes Petitioner's Second Supplemental Brief as a request to amend the Motion to Vacate under 28 U.S.C. § 2255.  Respondent is **DIRECTED** to file a Response to the Second Supplemental Brief within twenty-one (21) days.  Petitioner may file a Reply within fourteen (14) days thereafter.

## I.    BACKGROUND

Petitioner challenges his convictions after a jury trial on one count of conspiracy to distribute and to possess with intent to distribute 280 grams or more of cocaine base; three counts

of distribution of cocaine; two counts of distribution of 280 grams or more of cocaine base; and one count of possession of firearms in furtherance of a drug trafficking crime. The Court sentenced him to an aggregate term of 180 months' imprisonment. (*Amended Judgment*, Doc. 105). On February 15, 2019, the United States Court of Appeals for the Sixth Circuit affirmed that Judgment. *United States v. Forrest*, 763 F. App'x 466, 468–69 (6th Cir. 2019). The Sixth Circuit summarized the facts as follows:

> Defendant Deandre Forrest is a drug dealer. Operating out of his apartment in Columbus, Ohio, Forrest manufactured crack cocaine, and sold both crack and powder cocaine to customers. His activities eventually caught the eye of local and federal law-enforcement authorities and he was convicted of multiple drug and firearm counts.
>
> ***
>
> Law enforcement officials began investigating Forrest's drug-dealing activities in 2016. The investigation led to several controlled drug buys of distribution-level amounts of cocaine between a confidential informant and Forrest, and the execution of a search warrant on Forrest's apartment in June 2017. Just before officials were about to enter Forrest's apartment to effectuate the warrant, they observed Young enter the rear of the apartment and leave moments later, carrying what appeared to be a brown grocery bag. Forrest's own video surveillance system showed that Young entered carrying a bag, retrieved something inside, and left holding something in his left hand—all within thirty seconds. Officers stopped Young's car and discovered a brown grocery bag that contained four plastic sandwich bags, each containing 125 grams of crack cocaine—for a total of nearly half a kilogram. The crack cocaine was recently manufactured, and not in a form or size conducive to individual, one-gram-a-dose use. Officers found other significant evidence of drug trafficking and recent manufacturing activity inside Forrest's apartment. In addition, they located a bag containing about $27,000 in cash, "tied up with ... rubber bands."
>
> A few days later, Young, Forrest, and an unidentified woman spoke on a recorded jailhouse phone call. During the call, Forrest discussed how the authorities were going to try to get Young to cooperate, described Young as "my bro," and suggested that if Young cooperated, "then I don't know what you are talking about." Forrest reiterated he had Young's "back," and promised to "get that paper"—i.e., money for Young's legal expenses.

*Id*.

On February 10, 2019, Petitioner filed the now ripe Motion to Vacate under 28 U.S.C. § 2255. (Doc. 152). He asserts that his convictions violate the Fourth Amendment (claim one); that he was denied the effective assistance of counsel (claim two); and that his convictions violate due process (claim three). It is the Respondent's position that Petitioner's claims fail.

Also, on December 17, 2020, Petitioner filed a "Second Supplemental Brief in Support." Yet, rather than supplement, Petitioner raises seven new claims for relief in that brief. (Doc. 182).

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

To obtain relief under 28 U.S.C. § 2255, a prisoner must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). In addition, "it is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)). Accordingly, if a claim could have been raised on direct appeal, but was not, the Court will not consider the claim via a § 2255 motion unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claim previously; or (2) that he is "actually innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

### III. DISCUSSION

Petitioner's three ripe claims—and his seven proposed claims—are addressed below.

#### A. Claim One

In his first claim, Petitioner asserts that police illegally searched the residence at 1197 S. 22nd Street, seizing a video recording from Petitioner's security camera, in violation of the Fourth Amendment. Petitioner appears to have withdrawn this claim as an independent issue and now raises it in the context of ineffective assistance of counsel. (*See Reply*, Doc. 165, PAGEID # 1471). Yet, out of an abundance of caution, the Court addresses the issue. Regardless of how it is raised, it has no merit.

The Constitution does not guarantee the right to have "the evidentiary fruits of an illegal search or seizure suppressed at trial." *Winters v. United States,* Nos. 1:12-CR-102-HSM-SKL-1, 1:16-CV-400-HSM, 2019 WL 1556669, at *4 (E.D. Tenn. Apr. 10, 2019) (citing *Davis v. United States*, 564 U.S. 229, 236 (2011). Thus, "[b]ecause questions regarding the admissibility of otherwise relevant evidence seldom touch upon the 'basic justice' of a conviction, the Supreme Court bars Fourth Amendment claims from habeas review." *Id*. (citing *Northrop v. Trippett*, 265 F.3d 372, 378 (6th Cir. 2001). A prisoner must show that he has been denied the opportunity for a "full and fair litigation" of his Fourth Amendment claim before he may obtain review of that claim in federal habeas corpus proceedings. *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)). Petitioner does not allege, and the record does not reflect, that these are the circumstances here. Therefore, this claim does not provide Petitioner a basis for relief.

The Court will address the issue, however, as raised by Petitioner in the context of his claim of ineffective assistance of counsel.

### B. Claim Two

Petitioner's second claim has two sub parts. He asserts that both his trial counsel and his appellate counsel provided constitutionally deficient representation. "In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to effective assistance of counsel serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation and quotations omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a movant claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687. To show deficient performance, a petitioner must demonstrate that his counsel's representation "'fell below an objective standard of reasonableness.'" *Richardson v. Palmer*, 941 F.3d 838, 856 (6th Cir. 2019) (quoting *Strickland*, 466 U.S. at 688). "Regarding prejudice," a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Richardson*, 941 F.3d at 856 (quoting *Premo v. Moore*, 562 U.S. 115, 121 (2011)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland,* 466 U.S. at 689).

### 1. Ineffective Assistance of Trial Counsel

Petitioner claims his trial counsel violated his constitutional rights by not pursuing a plea deal, not filing a motion to suppress, conceding his guilt, and otherwise erring during trial.

_Plea Negotiations_: Petitioner asserts that he was denied the effective assistance of counsel because his attorney did not pursue a plea bargain on his behalf and failed to communicate any plea offer from the government. Attorney Dennis McNamara, Petitioner's former defense counsel, indicates that the government refused to engage in plea negotiations and declined to extend any plea offer to the Petitioner, other than to state that they would not oppose a reduction under the United States Sentencing Guidelines for acceptance of responsibility. McNamara swears that he informed the Petitioner of the government's position. (_Affidavit_, Doc. 157-1, PAGEID # 1396-97). Perhaps most important, the United States Attorney has verified that the government declined to engage in plea negotiations with the Petitioner:

> Mr. McNamara contacted me in the fall of 2017 to inquire about the possibility of a plea offer from the United States. I informed him that no plea offer would be extended given the facts and circumstances of his client's case.
>
> More specifically, I told Mr. McNamara that the Government would not extend a plea offer to Deandre Forrest in this case because of the following factors: (1) he faced a mandatory minimum statutory sentence of ten years to life on Counts 1, 5, and 6, to be followed by a mandatory, consecutive term of five years to life on Count 8; (2) his applicable guideline sentencing range would be at or above the mandatory minimum sentencing terms I just described; and (3) we viewed him as a leader of the drug trafficking conspiracy alleged in Count 1 of the Indictment and were therefore unwilling to dismiss any of the charges against him.
>
> I did inform Mr. McNamara that, if his client wished to plead guilty to the indictment, without the benefit of a plea agreement, the Government would not oppose a 3-level reduction in his overall offense level under Section 3E1.1 of the Sentencing Guidelines for his timely acceptance of responsibility. But I reiterated that this was the best we could do, and that no plea offer would be extended.

(_Affidavit of David M. DeVillers_, Doc. 157-2, PAGEID # 1401–02).

Where "the Government exercises its discretion not to bargain for a guilty plea, no constitutional question is presented." _Rodriguez-Penton v. United States_, 905 F.3d 481, 489 (6th Cir. 2018). A criminal defendant has no constitutional right to plea bargain. _Carter v. United States_, Nos. 1:09-CR-103-HSM-SKL-1, 1:14-CV-285-HSM, 2018 WL 1387065, at *10 (E.D.

Tenn. Mar. 19, 2018) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *United States v. Martin*, 516 F. App'x 433, 443 (6th Cir. 2013)). "Accordingly, counsel cannot be deemed deficient for not having obtained a plea bargain when there is no evidence the government was amenable to negotiate or that a plea deal ever was offered." *Id.* Thus, the record does not indicate that defense counsel unconstitutionally failed to engage in plea negotiations or advise Petitioner about a plea offer. Nothing in the record supports Petitioner's allegation that his attorney's actions or inactions in any way contributed to the lack of a plea offer from the government. To the contrary, the evidence shows that the government had no appetite to negotiate with Petitioner, and Petitioner has failed to establish the ineffective assistance of counsel on this basis.

*Failure to File a Motion to Suppress*: Petitioner next asserts that his attorney violated his constitutional rights by not moving to suppress evidence obtained from a search warrant, including the video recording from Petitioner's security camera; an audio phone recording of Petitioner's phone conversation from the jail; and evidence seized from an incapacitated person, *i.e.*, co-defendant Antoine Young. (Doc. 152, PAGEID # 1350).

Petitioner first argues that the affidavit supporting the search warrant was insufficient because Detective Gauthney prepared it on July 22, 2015, regarding illegal acts alleged to have occurred in June 2017. (*Reply*, Doc. 165, PAGEID # 1486; *Supplemental Brief*, Doc. 178, PAGEID # 1553–56). Petitioner refers to a digital signature date of July 22, 2015. (*Supplemental Brief*, Doc. 178, PAGEID # 1553–55). He additionally complains that the affidavit for the warrant did not include the weight or purity of the cocaine or the amount of city funds used by the confidential informant to purchase drugs. (*Id.*, PAGEID # 1557). Last, Petitioner argues that the warrant is invalid because it did not establish a conspiracy. (*Id.*, PAGEID # 1557–58). Where a criminal defendant asserts the ineffective assistance of counsel based upon his attorney's failure

to litigate a Fourth Amendment claim, he must show that the Fourth Amendment claim would have been meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate prejudice. *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1996)). The Fourth Amendment requires the existence of probable cause for a search warrant to issue." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (citing U.S. Const. amend. IV: "No Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also United States v. Allen*, 211 F.3d 970, 979 (6th Cir. 2000) (en banc) (Clay, J., dissenting) ("[T]he requirement that a warrant be supported by specific evidence of criminal activity before being issued is deeply rooted in our history."); *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1998) (elaborating that "the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant").

> "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990), and is found to exist when there is "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting United States v. Bowling, 900 F.2d 926, 930 (6th Cir. 1990)).

*United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

The record shows that the search warrant and affidavit in support were signed and filed in June 2017. (Doc. 157-3, PAGEID # 1403–08). Nothing in the record supports Petitioner's assertion that the warrant and Affidavit in Support was written and signed two years earlier. To the contrary, the Affidavit in Support states:

> On a day in the second week of June, 2017 Criminal Intelligence Unit detectives observed the C/I enter 1197 S. 22nd St. to buy crack-cocaine. The C/I stated he/she gave a male black, named Deandra "Waka" Forrest a specific amount of official

> city funds and in return he/she received a large amount of crack-cocaine. The C/I exited the location met, [*sic*] with Detective Gauthney and immediately surrendered the crack cocaine. Detective Gauthney field tested the suspected crack-cocaine and it did test positive for cocaine.

(*Affidavit in Support of Warrant to Search*, Doc. 178-1, PAGEID # 1570). So, this first argument has no factual support.

Additionally, Police did not have to allege or prove any conspiracy or include the weight of the "large amount of crack-cocaine" (*see id.*) purchased by the confidential informant or specify the dollar amount of city funds used to purchase the drugs to establish probable cause. *See, e.g.*, *United States v. Pinson*, 321 F.3d 558, 564 (6th Cir. 2003) (holding that affidavit that describes how police had observed confidential informant purchase dugs from house within last 72 hours was sufficient); *Jackson*, 470 F.3d at 307-08 (police observations of controlled buy by confidential informant sufficient to establish probable cause for warrant). In short, the record does not reflect a potentially viable basis to challenge the validity of the search warrant or potentially meritorious grounds on which defense counsel could have sought exclusion of the audiotape of Petitioner's jail phone conversation or seizure of drugs from Antoine Young. A liberal construction of the pleadings does not require this Court to scour the record or conjure allegations on Petitioner's behalf. *Roman-Oliver v Joyner*, No.7:19-CV-50-REW, 2019 WL 6696417, at *4 (E.D. Ky. Dec. 9, 2019) (quoting *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); citing *Purnell v. United States*, 496 F. App'x 596, 601 (6th Cir. 2012)().

Further, and contrary to Petitioner's allegation here, the search warrant authorized the seizure of the video recording on Petitioner's security camera located at the identified premises. (*See* Doc. 157-3, PAGEID # 1403–06). Defense counsel objected to the admission of the recording of Petitioner's jail telephone conversation with Antoine Young as unauthenticated and

inadmissible hearsay. (*See* Doc. 157-1, PAGEID # 1397). The Court overruled that objection. (*Transcript,* Doc. 113, PAGEID # 1018). So this argument, too, has no merit.

<u>*Conceding Guilt*</u>: Petitioner next claims that his counsel unconstitutionally conceded his guilt on Counts 2, 3, and 4 over his express objections. (Doc. 152 at 18, ¶ 9). The Court conducted an evidentiary hearing on this claim in order to resolve the underlying factual dispute. (*Order*, Doc. 167). To aid Petitioner, the Court appointed counsel to represent him at the hearing. (*Id.*, PAGEID # 1515).

### a. The Evidence

Petitioner testified that he hired Attorney Dennis McNamara to represent him in this case. Petitioner and Attorney McNamara had a longstanding relationship—Attorney McNamara had successfully represented Petitioner in a jury trial in 2005—Petitioner was acquitted on federal drug trafficking charges. (*Transcript*, Doc. 191, PAGEID # 1637).

In this case, Petitioner faced multiple charges. And, as explained, the government had no interest in making a deal. (*Id.*, PAGEID # 1645; *see Affidavit of David M. DeVillers*, Doc. 157-2, PAGEID # 1401–02). Count 1 charged Petitioner with conspiracy to commit drug trafficking and carried a mandatory minimum term of ten years to life. (*Id.*, PAGEID # 1640). Counts 2 through 4 charged Petitioner with three individual sales of cocaine to an ATF confidential informant and carried a maximum term of twenty years each. (*Id.*, PAGEID # 1640–41). Counts 5 and 6 charged Petitioner with the distribution and intent to distribute 280 or more grams of cocaine base and carried a punishment of ten years to life. (*Id.*, PAGEID # 1641). Count 8 charged Petitioner with possession of a firearm in furtherance of a drug trafficking crime. It carried a five year minimum term on top of any other sentence(s) imposed. (*Id.*).

Attorney McNamara filed a Notice of Appearance on July 28, 2017, and represented Petitioner at the arraignment where Petitioner entered a Not Guilty plea on all charges. (Docs. 25, 26). Thereafter, in a letter to the Court, dated October 26, 2017, counsel indicated that Petitioner admitted his guilt on Counts 2, 3, and 4 and wanted to plead guilty and accept responsibility for those three sales of cocaine. Defense counsel requested a change of plea hearing on those charges, stating that Petitioner intended to continue his not guilty pleas and to proceed to trial on the remaining charges. (Docs. 41, 41-1, PAGEID # 95). Because of this letter, Court scheduled a hearing for November 3, 2017. During the hearing, it became clear that the government intended to introduce Petitioner's guilty plea as proof of guilt on the conspiracy charge. (*Transcript*, Doc. 46, PAGEID # 103). In other words, the government's view was that Petitioner could not avoid the evidence of the three sales of cocaine by pleading guilty to Counts 2, 3, and 4.

Despite defense counsel's arguments to the contrary, the Court seemed to agree with the government. (*Id.*, PAGEID # 103–04). So the Court inquired as to whether Petitioner understood that his guilty plea on Counts 2, 3, and 4 may be used against him at trial as proof of guilt of the conspiracy. (*Id.*, PAGEID # 103–06).

> COURT: Mr. Forrest, do you understand that any statement that you may make in pleading guilty to Counts 2, 3, and 4 may be admissible against you at trial as proof of the conspiracy count?
>
> I see him shaking his head and looking at you, Mr. McNamara.
>
> MR. McNAMARA: He does not understand entirely
>
> COURT: Well, the Court has discretion to accept or reject an offer to plead guilty, and in this case I'm going to reject that offer.

(*Id.*, PAGEID # 106–07). Petitioner thus proceeded to trial on all of the charges against him.

What happened next—and the for the rest of trial—is hotly disputed. Petitioner claims he immediately expressed his displeasure with counsel. After the guilty plea hearing, Petitioner says

that he warned Attorney McNamara never to pull a "stunt" like that—or admit Petitioner's guilt—again.  (*Transcript*, Doc. 191, PAGEID # 1626).  And Petitioner testified that he expressed this directive multiple times throughout trial.  (*See, e.g.*, *id.*, PAGEID # 1627, 1635–36, 1656).  What is more, Petitioner claims that Attorney McNamara never talked to him about conceding guilt: "That was never – and in any of the times he visited me to the end of the trial, we never talked about conceding nothing."  (*Id.*, PAGEID # 1656).  Petitioner did, however, concede that defense counsel met with him to discuss the prosecution's witnesses; yet, Petitioner says that the proposed defense strategy of conceding guilt to Counts 2, 3, and 4 was never discussed.  (*Id.*, PAGEID # 1628–29; 1630).

Petitioner further testified that he thought that his attorney would follow his instructions and he was "surprised" and "devastated" when defense counsel conceded Petitioner's guilt on Counts 2, 3, and 4 during opening statement.  (*Id.*, PAGEID # 1631).  And Petitioner says he also communicated his wishes in writing.  (*Id.*, PAGEID # 1630).  Petitioner testified that, immediately after jury selection, he wrote Attorney McNamara a note, stating his innocence.  (*Id.*). And he wrote another note, telling his attorney to "stop saying I'm guilty."  (*Id.*, PAGEID # 1631).  Petitioner claims that when he gave Attorney McNamara this second note, he looked at it and handed it back.  Petitioner said nothing more about it.  (*Id.*, PAGEID # 1633).  Petitioner was angry and later asked his attorney why he admitted guilt against Petitioner's explicit instructions.  (*Id.*, PAGEID # 1634–35).  Petitioner claims he got no direct response—Attorney McNamara simply told Petitioner that he did his best.  (*Id.*).

During cross-examination, Petitioner admitted that he said nothing to the Court and never requested to speak to the District Judge about not conceding guilt—or his dissatisfaction with counsel.  He testified that he did not know that was an option.  (*Id.*, PAGEID # 1651–55).

Petitioner did not recall how often Attorney McNamara had visited him in jail during his representation. (*Id.*, PAGEID # 1642). He did remember that Attorney McNamara sent him letters and discovery but claimed that the letters were never discussed. (*Id.*). Petitioner did recall receiving a letter from counsel indicating that Petitioner would be pleading guilty to Counts 2, 3, and 4. (*Id.*, PAGEID # 1645–46). Petitioner says he would have considered pleading guilty to those charges—even though he later told his attorney not to admit anything—because of the shorter sentence involved. (*Id.*, PAGEID # 1645). Petitioner did not remember whether he met with defense counsel prior to the scheduled guilty plea hearing on those charges—but defense counsel never advised Petitioner about the consequences of a guilty plea. (*Id.*, PAGEID # 1623, 1645). Likewise, Petitioner testified that defense counsel did not discuss with Petitioner the letter he wrote about entering a guilty plea or the reason he recommended Petitioner enter a guilty plea to Counts 2, 3, and 4. (*Id.*, PAGEID # 1646). Petitioner says that he did not know—and his attorney did not tell him—that those charges could be used to prove the underlying conspiracy charged. (*Id.*, PAGEID # 1624). Most importantly, Petitioner testified that he never agreed to plead guilty to any of the charges against him. (*Id.*). "[N]ever, never was I taking a plea. . . . I never got offered a plea, so I was going to trial, period." (*Id.*, PAGEID # 1656). "I never wanted to plead guilty." (*Id.*, PAGEID # 1657).

Petitioner also testified that he wanted to fire Attorney McNamara after the November 3, 2017 hearing, but he had already paid Attorney McNamara and had no money to hire a new attorney. (*Id.*, PAGEID # 1647, 1649, 1658). Yet, after he was found guilty on all counts, Petitioner did fire Attorney McNamara and hired Attorney Roger Soroka to represent him at sentencing. (*Id.*, PAGEID # 1635).

Unsurprisingly, Attorney McNamara recalls things very differently.  He testified to communicating regularly with Petitioner from the date of Petitioner's arrest in July or August 2017, until Petitioner discharged him sometime in January 2018.  (*Id.*, PAGEID # 1664).  And jail records show that Attorney McNamara met with the Petitioner eighteen times during this period. (*Id.*, PAGEID # 1689).  During these meetings, Attorney McNamara says that discovery and trial strategy were discussed.  (*Id.*, PAGEID # 1690).  More specifically, Attorney McNamara testified that he discussed the videos the government had of Petitioner selling crack cocaine to a confidential informant and a video of Petitioner's co-defendant, Antoine Young, coming and going from the house.  (*Id.*, PAGEID # 1692–93).  It was Attorney McNamara's opinion that Petitioner had no chance of an acquittal on Counts 2, 3, and 4, but a good chance of winning at trial on the remaining charges.  (*Id.*, PAGEID # 1694–95).

He testified that he spoke with Petitioner about the guilty plea hearing and the proposed guilty plea to Counts 2, 3, and 4 both before and after the hearing.  (*Id.*, PAGEID # 1665).  And, says, Attorney McNamara, Petitioner never expressed an unwillingness to admitting guilt on Counts 2, 3, and 4.  (*Id.*, PAGEID # 1666).  Attorney McNamara advised Petitioner that they would concede his guilt on those charges at trial.  (*Id.*).  They talked about it several times, even before they tried to do it formally.  (*Id.*).  They also discussed the reasons for the Court's refusal to accept the guilty plea on those charges prior to trial and what that meant going forward.  (*Id.*).  In fact, Attorney McNamara testified that they discussed it multiple times.  (*Id.*, PAGEID # 1668–69).

> We talked about the fact that the evidence on the three – police called them controlled buys – was very strong and about the fact that he had virtually no chance at all to win on those, but we thought he did on the conspiracy charge and the charge involving a half kilo of crack cocaine.  The three sales. . . would have been a much less serious offense and much less serious penalty.
>
> We talked about the fact that if he denied through me, he didn't testify, but if he denied things that were obvious, the jury would be less likely to believe him in

> denying things where he had a very strong argument that he didn't know what this
> Mr. Young was doing.  And it was primarily a matter of coming across as sincere,
> we're accountable for what we did, not for what we didn't do, that kind of thing.

(*Id.*, PAGEID # 1669–70).

In further describing the strategy, Attorney McNamara testified that "[w]e were trying to

separate things he was responsible for and things he was not."  (*Id.*, PAGEID # 1670).  McNamara

told Petitioner that it would be the defense strategy that the charges were unrelated—that Petitioner

could sell cocaine but not be partners with anybody, or a co-conspirator with anybody.  They also

discussed denial and disassociation from being the resident, owner, or occupant of the apartment.

(*Id.*, PAGEID # 1672).  "I told him that a jury wasn't going to believe him on his denial of the half

kilo if they think he's a liar about the others."  (*Id.*, PAGEID # 1695).

> We were denying that it was his apartment.  He didn't rent it, wasn't in his name,
> he didn't pay the rent, maybe once in a year or two.  We were denying that he had
> any knowledge of the guns that were found.  We were denying that it was his 28,000
> or whatever the number or amount of cash was that they found.  We were denying
> that he was responsible for. . . they found a couple of ounces of cocaine in the
> kitchen.  They found a few grams on a guy named Dabney who was just hanging
> out doing drugs.  And, most importantly, they found half a kilo in Mr. Young's car
> as he drove away.  And those were things we were denying all of, and if. . . we lost
> credibility before the jury by also denying fairly obvious things, our chances would
> go down significantly.

(*Id.*, PAGEID # 1695–96).

Attorney McNamara testified that he discussed this strategy with Petitioner.  (*Id.*, PAGEID

# 1696).  His intent was to have Petitioner plead guilty prior to trial so that Petitioner could obtain

a reduction in his recommended sentence under the United States Sentencing Guidelines for

acceptance of responsibility.  (*Id.*, PAGEID # 1674).  To that end, Attorney McNamara met with

Petitioner prior to the scheduled guilty plea hearing and discussed with Petitioner what he thought

Petitioner should do and why and discussed what would happen at the hearing.  (*Id.*, PAGEID #

1697–98).  Petitioner understood the strategy of conceding guilt on Counts 2, 3, and 4, and had no problem with it.  (*Id.*, PAGEID # 1675).  "[I]t was my impression he understood very well exactly what we were doing and why we were doing it."  (*Id*., PAGEID # 1676).  Attorney McNamara met with Petitioner four times after the arraignment and prior to trial to discuss the upcoming trial.  (*Id*., PAGEID # 1701).  He did not recall receiving any notes from the Petitioner during trial or at any other time instructing him to stop admitting Petitioner's guilt on Counts 2, 3, and 4.  (*Id*., PAGEID # 1679).  But if he had written something like that, Attorney McNamara testified that he would have remembered.  (*Id*.).  Attorney McNamara testified that Petitioner never objected to conceding guilt on Counts 2, 3, and 4.  (*Id*., PAGEID # 1702–05).

Consistent with Attorney McNamara's testimony at the evidentiary hearing, the record shows that counsel argued at trial that Petitioner did not live at 1197 South 22nd Street, but Petitioner (and many others) frequented the location, buying and selling illegal drugs, drinking rum, and playing video games.  (*Transcript*, Doc. 110, PAGEID # 624–25).  Petitioner acknowledged that he had sold cocaine to Williams three times (*Id*., PAGEID # 626), but denied any involvement in a drug conspiracy, the cocaine found in Young's car, or the firearms or other evidence seized by police from the house on 22nd Street.  (*Id*., PAGEID # 626–30; *Transcript*, Doc. 114, PAGEID # 1119–20).  As discussed, the government had substantial evidence of Petitioner's guilt on the three counts of distribution of cocaine to Williams including video recordings of the confidential informant purchasing cocaine from the Petitioner that were played for the jury at trial.  (Doc. 110, PAGEID # 649–59; Doc. 114, PAGEID # 1093).  In closing, defense counsel argued:

> Deandre Forrest is responsible for selling powder cocaine to an undercover ATF-paid informant three times. . . . Three sales.  He did that.  Those are Counts 2, 3, and 4 of the Indictment.  They have not been contested. . . . There's no dispute.  He

will be held accountable and punished accordingly, appropriately, for the crimes that he committed.

But accountability also means you don't get punished for things you didn't do. . . and he's not responsible for the other four charges, Counts 1, 5, 6, and 8. There is no proof of those other charges.

(*Transcript,* Doc. 114, PAGEID # 1119–20). He argued that Petitioner had acted alone. (*Id.*, PAGEID # 1123–24; 1133).

Mr. Forrest did some bad things. He sold drugs three times. He's going to be punished for it. He's charged with way more bad things, which he didn't do and for which there is no proof and for which he shouldn't be punished for it.

(*Id.*, PAGEID # 1134).

    *b.  The Law*

A criminal defendant has a "protected autonomy right" under the Sixth Amendment "'to make fundamental choices about his own defense,'" including whether to persist in maintaining his innocence even in the face of overwhelming evidence of his guilt." *United States v. Rosemond*, 958 F.3d 111, 120 (2nd Cir. 2020) (citing *McCoy v. Louisiana*, -- U.S. --, --, 138 S. Ct. 1508, 1511 (2018) (footnote omitted). In other words, "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *McCoy*, 138 S.Ct. at 1509 (emphasis in original) (quoting U.S. Const. amend. VI). Under these circumstances, counsel's failure to defer to his client's wish constitutes structural error not subject to harmless error analysis and requires the defendant's conviction to be vacated. *See United States v. Hashimi*, 768 F. App'x 159, 162-63 (4th Cir. 2019) (citing *McCoy*, 138 S.Ct. at 1511). In *McCoy,* defense counsel conceded the defendant's guilt during the guilt phase of a capital trial despite McCoy's vociferous insistence that he did not engage in the charged acts and adamant objection to any admission of guilt. *McCoy*, 138 S.Ct. at 1505.

The Supreme Court's treatment of the *McCoy* error contrasts with its treatment of a similar issue in *Florida v. Nixon*, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). In *Nixon,* the Court held that a lawyer's concession of guilt without the defendant's "express consent" does not automatically constitute ineffective assistance of counsel. *See* 543 U.S. at 178, 125 S.Ct. 551. "[W]hen a defendant, informed by counsel, neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course." *Id.* The defendant in *Nixon* was repeatedly informed of his attorney's proposed strategy to concede guilt but refused to respond to inquiries from his lawyer or the court. *See id.* at 189, 125 S.Ct. 551. The difference in *McCoy* was that the defendant opposed his attorney's assertion of guilt "at every opportunity, before and during trial, both in conference with his lawyer and in open court." *McCoy*, 138 S. Ct. at 1509.

*United States v. Felicianosoto*, 934 F.3d 783, 786-87 (8th Cir. 2019); *see also Pennebaker v. Rewerts*, No. 17-12196, 2020 WL 4284060, at *4 (E.D. Mich. July 27, 2020) (distinguishing *McCoy* from *Nixon*). Thus, the Supreme Court has recognized that, under certain circumstances, a defense attorney's concession to a client's guilt on a lesser charge at trial does not violate *Strickland* or require automatic reversal under the *McCoy* rule. *See Simmons v. Huss*, No. 2:18-cv-11984, 2019 WL 1746271, at *4 (E.D. Mich. Apr. 18, 2019) (citing *Nixon*, 543 U.S. at 187-88 (2004) ).

By candidly acknowledging the strength of the prosecutor's case, an attorney can build credibility with the jury and possibly persuade the jury to focus on other factors important to the defendant. *Yarborough v. Gentry*, 540 U.S. 1, 9 (2003) (per curiam). An attorney "cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.'" *Nixon*, 543 U.S. at 192 (citing *United States v. Cronic*, 466 U.S. 648, 656 n. 19 (1984)). Therefore, "[a] defense counsel's concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel." *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004) (Gadola, J.) (citing *Haynes v. Cain*, 298 F.3d 375, 381-82 (5th Cir. 2002); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991); *see also, Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender.").

*Id.*

c.     *Application*

The Court finds credible defense counsel's testimony on key matters.  First, the Court credits Attorney McNamara's testimony that he repeatedly advised Petitioner of the trial strategy he intended to pursue on Petitioner's behalf.  Specifically, the Court believes that Attorney McNamara devised a strategy whereby Petitioner would concede guilt on the less serious charges in an attempt to avoid the more serious ones.  The communications to Petitioner regarding the discovery in this matter and the eighteen jail visits with counsel bolster Attorney McNamara's representations on this front.  Further, the trial transcript shows that this strategy was pursued from start to finish.  Second, the Court credits Attorney McNamara's testimony that Petitioner understood—but did not object—to this strategy.  Particularly compelling was this part of Attorney McNamara's testimony:  "[I]t was my impression he understood very well exactly what we were doing and why we were doing it."  (Doc. 191, PAGEID # 1676).  Given that counsel has known Petitioner since at least 2005, counsel's impressions of Petitioner carry weight with this Court.  (*See Transcript*, Doc. 191, PAGEID # 1637).  Moreover, Attorney McNamara testified repeatedly that prior to the verdict, Petitioner never objected to the strategy.  (*See* Transcript, Doc. 191, PAGEID # 1666; PAGEID # 1668–69; PAGEID # 1675; PAGEID # 1702–05).

On the other side, nothing in the record—other than his own testimony—supports Petitioner's assertion that he opposed counsel's strategy or insisted on a defense of complete innocence.  Two particular aspects of Petitioner's testimony undermine his credibility.  To start, he claims that he informed Attorney McNamara again and again of not wanting to concede guilt.  Yet, he never informed the Court or otherwise attempted to stop the strategy counsel was so obviously pursuing.  During the evidentiary hearing, the Undersigned had the opportunity to observe Petitioner and finds it unlikely that he would remain silent if his retained counsel was

pursuing a strategy in contravention of his instructions.  Additionally, Petitioner testified that he wanted to fire Attorney McNamara immediately after the November 3, 2017, hearing.  Yet, he did not fire Attorney McNamara.  Petitioner claims this was because he did not have the financial resources to hire another lawyer, but just two months later, he discharged Attorney McNamara and hired new counsel.  In sum, the record demonstrates that Petitioner did not object contemporaneously to counsel's strategy to concede guilt on Counts 2, 3, and 4.

The record instead reflects that, like the defendant in *Nixon*, Petitioner objected to counsel's defense strategy only after the verdict.  "As a result, this is not a case of structural error, as in *McCoy,* but rather, invokes *Nixon's* analysis of ineffective assistance of counsel."  *Pennebaker*, 2020 WL 4284060, at *4.  Moreover, in view of the overwhelming evidence of Petitioner's guilt on the three counts of distribution of cocaine, including videotaped evidence, and the lack of any plea offer from the government, defense counsel's strategic decision to admit to Petitioner's guilt on those charges constituted a reasonable defense, attempting to avoid a finding of guilt on the remaining, more serious charges.  *See id*. at *5.  Despite Petitioner's argument to the contrary, counsel's acknowledgement of Petitioner's guilt on Counts 2, 3, and 4 did not amount to an admission of guilt on the remaining charges, and the jury instructions do not indicate otherwise. (*Transcript,* Doc. 114, PAGEID # 1160–67).

In sum, Petitioner has failed to establish that he was denied the effective assistance of counsel when defense counsel conceded his guilt on Counts 2, 3, and 4.

<u>Other Trial Errors</u>:  Petitioner additionally contends that his trial attorney should have objected to erroneous jury instructions on the charge of conspiracy, for failure to include all of the elements of the offense. (*Reply*, Doc. 165, PAGEID # 1498).  Petitioner maintains that the Court also improperly instructed the jury that it must find him guilty on the conspiracy charge if it found

him guilty on any of the three counts of distribution of cocaine.  (*Id.*).  A review of the record shows that these assertions have no merit. (*Transcript,* Doc. 114, PAGEID # 1160–67).[1]

### 2. Ineffective Assistance of Appellate Counsel

In claim two, Petitioner also asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal an issue regarding a fatal variance of the evidence presented on the charge of conspiracy, erroneous jury instructions, structural error based on the ineffective assistance of trial counsel, and denial of due process on unspecified grounds. (*Reply*, Doc. 165, PAGEID # 1499).   According to the Petitioner, the evidence at trial unconstitutionally differed materially from the charges in the Indictment due to a lack of evidence indicating Petitioner's involvement in a conspiracy.  (*Id.*, PAGEID # 1503–04).  Petitioner also again maintains that the Court erroneously instructed the jury, that if it found him guilty of any of the charges set forth in Counts Two, Three, Four, or Five, it must find him guilty of the charge of conspiracy as charged in Count One.  (*Reply*, Doc. 165, PAGEID # 1503).

The *Strickland* test applies to this claim.  *Burger v. Kemp*, 483 U.S. 776, 781–82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985).  Still, an appellate attorney need not advance every argument urged by the appellant, regardless of the merit of that argument.  *Jones v. Barnes*, 463 U.S. 745, 751– 752 (1983).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751– 52).  In order to evaluate a claim of ineffective assistance of appellate counsel, a court must assess

---

[1] Petitioner has withdrawn his claim that he was denied the effective assistance of counsel based on his attorney's failure to subpoena defense witnesses. (*Reply,* Doc. 165, PAGEID # 1488).

the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*. If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id*. The Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

> 1. Were the omitted issues "significant and obvious?"
>
> 2. Was there arguably contrary authority on the omitted issues?
>
> 3. Were the omitted issues clearly stronger than those presented?
>
> 4. Were the omitted issues objected to at trial?
>
> 5. Were the trial court's rulings subject to deference on appeal?
>
> 6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> 7. What was appellate counsel's level of experience and expertise?
>
> 8. Did the Petitioner and appellate counsel meet and go over possible issues?
>
> 9. Is there evidence that counsel reviewed all the facts?
>
> 10. Were the omitted issues dealt with in other assignments of error?
>
> 11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999). "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel

was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) (citing *Strickland*, 466 U.S. 689; *Rust v. Zent*, 17 F.3d 155, 161–62 (6th Cir. 1994)).  Counsel's failure to raise an issue on appeal is constitutionally ineffective only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  "Counsel's performance is strongly presumed to be effective." *McFarland*, (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000) (citing *Strickland*)).  "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Petitioner has failed to meet this standard here.

The record does not support Petitioner's claim of a reversible variance between the evidence and the conspiracy charge.  "A variance to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Olea-Coronado*, 391 F. App'x 508, 509 (6th Cir. 2010) (quoting *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006)).  "In the conspiracy context, a fatal variance occurs only when 'the evidence can reasonably be construed only as supporting a finding of multiple conspiracies [,]' viewing the evidence 'in the light most favorable to the government.'" *Id*. (citing *United States v. Robinson*, 547 F.3d 632, 642 (6th Cir. 2008)); *see also United States v. Mize*, 814 F.3d 401, 410 (6th Cir. 2016) (citations omitted).  The evidence did not reflect the existence of more than one conspiracy.

Moreover, as discussed, the record does not indicate that the Court issued improper jury instructions or that defense counsel committed structural error by acknowledging Petitioner's guilt of selling cocaine to the confidential informant three times, particularly in view of the overwhelming evidence of guilt on those charges.  In view of the facts presented, counsel's decision to acknowledge Petitioner's guilt on those charges constituted a reasonable trial strategy and did not prejudice the defendant.  To the extent that Petitioner now asserts that the evidence was constitutionally insufficient to sustain his conviction on the conspiracy charged in Count One, the United States Court of Appeals for the Sixth Circuit has already rejected this argument.  *United States v. Forrest*, 763 F. App'x at 567–69.  Claim Two should be dismissed.

### C.  Claim Three

In his third claim, Petitioner asserts that he was denied due process based on procedural errors and the "accumulation of error."  (*Motion to Vacate*, Doc. 152, PAGEID # 1351).  Aside from referring to a "variance of the conspiracy" (*see id*.), already discussed, Petitioner does not further clarify the basis for this claim.  And,

> [a] petitioner [ ] bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief.  A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

*United States v. Noble*, No. 1:14-cr-135, 2017 WL 626130, at *3 (N.D. Ohio Feb. 15, 2017); *see also Kidd v. United States*, Nos. 1:12-cv-358, 1:10-cr-114, 2013 WL 6795977, at *1 (E.D. Tenn. Dec. 20, 2013) (claim that is difficult to decipher and without factual support violates Rule 2(b) of the Rules Governing Section 2255 Proceedings in the United States District Court, and subject to dismissal on that basis).  These are the circumstances here.

24

What is more, "[t]o prevail under cumulative-error analysis, a defendant 'must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair.'" *United States v. Underwood*, 859 F.3d 386, 395 (6th Cir. 2017) (quoting *United States v. Warman*, 578 F.3d 320, 349 n.4 (6th Cir. 2009) (citation omitted)). "Because cumulative error analysis examines only actual errors, 'the accumulation of non-errors cannot collectively amount to a violation of due process.'" *Id.* (quoting *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) (internal quotation and citation omitted). The record does not indicate any accumulation of error warrants relief here.

### D. Supplemental Claims

While the Court was working to resolve Petitioner's initial motion to vacate, he filed a Second Supplemental Brief in Support in which he raises seven new claims for relief. (Doc. 182). The best read of this motion is that it is a motion to amend. Respondent is **DIRECTED** to file a Response to the Second Supplemental Brief that complies with the Rules Governing 2255 Cases in the United States District Courts, including a response as to whether Petitioner's claims may be time-barred under the provision of § 2255(f), within twenty-one (21) days. Petitioner may file a Reply within fourteen (14) days thereafter.

## IV.  DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that Claims One, Two, and Three be **DISMISSED.** Additionally, Respondent is **DIRECTED** to file a Response to the Second Supplemental Brief within twenty-one (21) days. Petitioner may file a Reply within fourteen (14) days thereafter. Finally, appointed counsel, Jordan M. Baumann, has fulfilled her obligations, and the Clerk is **DIRECTED** to terminate her representation.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Kimberly A. Jolson

**Date:**  April 16, 2021          **KIMBERLY A. JOLSON**
**UNITED STATES MAGISTRATE JUDGE**